UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN VINTAGE GUN AND PAWN,
INC. a/k/a American Vintage Guns, Inc.

      Plaintiff,

v.

                                      Case No. 8:12-cv-25-T-24-MAP

HOGAN MANUFACTURING, LLC,
ET AL.,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss. (Doc. No. 6). Plaintiff has filed a response in opposition. (Doc. No. 12). For the reasons stated herein, the motion is denied.

**I.    BACKGROUND**

Plaintiff, a Florida corporation, is a gun retailer and alleges that it had a longstanding business relationship with Patriot Ordinance Factory ("POF-USA"), a firearms manufacturer. In early 2011, Plaintiff states that it entered into a written contract for the purchase of guns from Defendant Hogan Manufacturing, a company owned and managed by Defendant Robert Hogan, that sells firearms. Before entering into this agreement, Plaintiff states that Robert Hogan falsely asserted that Hogan Manufacturing had the legal right to sell the thirty-two guns Plaintiff contracted to purchase. Furthermore, Plaintiff alleges that Robert Hogan and Chris DeSomma (who at the time was an employee of POF-USA, but he is now employed by Hogan Manufacturing) misrepresented Hogan Manufacturing's ability to fulfill Plaintiff's order. Despite paying the full amount due for the order, Plaintiff alleges that it received only fourteen

1

improperly constructed guns on May 26, 2011 and thus demanded a refund plus interest pursuant to the alleged agreed-upon terms of their contract. Plaintiff Robert Hogan agreed that Plaintiff would receive a refund in the amount of $46,400.00.  After returning the guns, Plaintiff alleges that Hogan Manufacturing failed to abide by the refund agreement.  Plaintiff alleges that Defendants collectively engineered this scheme to steal money from Plaintiff and to interfere with Plaintiff's existing relationship with POF-USA.

      As a result, Plaintiff asserts six claims against Defendants. Count I is a breach of contract claim against Hogan Manufacturing, alleging that the company failed to deliver the guns Plaintiff ordered and failed to abide by the terms of the refund agreement. Count II is a civil theft claim against Hogan Manufacturing and Robert Hogan, alleging that they intended to convert $46,400 of Plaintiff's money for their own use. Count III is a claim for intentional fraud against Hogan Manufacturing and Robert Hogan and alleges that they made false statements to induce Plaintiff to abandon its existing business relationship with POF-USA and to induce Plaintiff to enter into a contract with Hogan Manufacturing in order to convert Plaintiff's funds. Count IV asserts a negligent fraud claim against Hogan Manufacturing and Robert Hogan and alleges that they made false statements of material fact that they had the ability and legal right to sell the guns at issue, when they should have known that they did not have such a right. In Count V, Plaintiff asserts a claim for tortious interference with a business relationship against all Defendants, alleging intentional and unjustifiable interference with Plaintiff's existing relationship with POF-USA.  Count VI is a conspiracy claim against Chris DeSomma and Robert Hogan for allegedly engaging in a joint plan to induce Plaintiff to sever its relationship with POF-USA and to defraud Plaintiff into paying for guns that Hogan Manufacturing could not provide.

Defendants move for partial dismissal of Plaintiff's complaint. Specifically, Defendants argue: (1) this Court lacks personal jurisdiction over defendants DeSomma and Hogan; (2) defendant DeSomma was improperly served; (3) Counts II, III, IV, and VI of Plaintiff's Complaint must be dismissed under the economic loss rule, and (4) Counts II-VI of Plaintiff's complaint do not sufficiently plead claims.

## II.    DISCUSSION

### A.    PERSONAL JURISDICTION

1. Legal Standard

Determining whether this Court can exercise personal jurisdiction requires a two-step inquiry. Estate of Scutieri v. Chambers, 386 F. App'x 951, 953 (11th Cir. 2010). The Court must determine whether Florida's long-arm statute allows jurisdiction over the defendants and whether "exercising jurisdiction comports with the constitutional requirements of due process." Id.  "Under Florida law, the plaintiff bears the burden of proving personal jurisdiction" if a defendant raises a legitimate challenge to personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)(citation omitted).  Motions to dismiss for lack of personal jurisdiction "should be denied if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

2. Florida's Long-Arm Statute

Defendants argue that this Court may not exercise personal jurisdiction over Hogan and DeSomma, because the conduct alleged by Plaintiff does not fall within the ambit of Florida's long-arm statute.  The statute allows jurisdiction over any person "committing a tortious act"

3

within the state. Fla. Stat. § 48.193(1)(b). To commit a tortious act in Florida, "a defendant's physical presence is not required" and the act can be done through "telephonic, electronic, or written communications into Florida," with the caveat that "the cause of action must arise from the communications." Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002). Furthermore, "an out-of-state tort resulting in injury in Florida subjects the actor to jurisdiction under Florida's long-arm statute." Estate of Scutieri, 386 F. App'x at 955.

Plaintiff's claims against DeSomma and Hogan consist of allegations that they committed tortious acts within Florida. Specifically, Plaintiff alleges that Hogan committed intentional and negligent fraud via his email communications to Plaintiff in Florida, which caused injury to Plaintiff in Florida. (Doc. No. 1 at 2). Furthermore, Plaintiff alleges that Hogan engaged in civil theft, which resulted in injury to Plaintiff in Florida. (Doc. No.1, ¶ 16). Additionally, Plaintiff alleges that both DeSomma and Hogan engaged in a conspiracy to interfere, and did in fact interfere, with Plaintiff's business relationship with POF-USA, which caused injury to Plaintiff in Florida. (Doc. No. 1 at 7, 8). Thus, Plaintiff has sufficiently alleged that DeSomma and Hogan's conduct falls within the ambit of Florida's long-arm statute.

Furthermore, with regard to the civil conspiracy claim, the Court notes that "Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, [if] at least one act in furtherance of which is committed in Florida . . . even if the alleged civil conspirator otherwise has no connection to the state." AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009). So long as "the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy [and] at least some acts in furtherance of which were carried out in Florida," Florida's long-arm statute authorizes

4

jurisdiction. Id.  In this case, Plaintiff alleges that DeSomma and Hogan conspired to terminate Plaintiff's business relationship with POF-USA and to defraud Plaintiff into placing an order with Hogan Manufacturing, a company that could not fulfill the order. Furthermore, Plaintiff alleges that Hogan sent emails to Plaintiff in Florida in furtherance of the conspiracy. As such, these allegations are sufficient to show that personal jurisdiction over Hogan and DeSomma exists for the conspiracy claim.

Defendants Hogan and DeSomma argue that the Court cannot exercise personal jurisdiction over them for conduct that occurred while they were acting within the scope of their employment. Florida recognizes the "fiduciary shield" or "corporate shield" doctrine, which provides that actions undertaken by an employee in the course of his or her work for a corporation cannot form the basis for exercising jurisdiction over the employee. Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993)(citation omitted). However, a corporate employee that commits intentional misconduct can be subject to personal jurisdiction.  See id. at 1006 n.1.

In determining whether the fiduciary shield doctrine shields Hogan and DeSomma from personal jurisdiction, the Court must determine whether DeSomma and Hogan were acting in the course of their employment or whether they are alleged to have committed intentional misconduct.  This distinction is necessary, because "[i]f the law were otherwise, any corporate employee could be forced to defend a suit in the Florida courts, regardless of what the individual did with respect to his employer's business, so long as his employer engaged in business in this state." Bloom v. A. H. Pond Co., Inc., 519 F. Supp. 1162, 1170-71 (S.D. Fla. 1981).

5

In the instant case, Plaintiff alleges that defendants Hogan and DeSomma personally committed intentional misconduct---theft, fraud, tortious interference with a business relationship, and conspiracy. As such, Plaintiff's allegations are sufficient to show that personal jurisdiction over DeSomma and Hogan is appropriate despite the fiduciary shield doctrine.

3. Due process

The Due Process Clause of the Fourteenth Amendment "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

a. Minimum Contacts

The "minimum contacts" requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum state, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008) (internal citations omitted). Even a single act can meet this threshold so long as it creates a "substantial connection" with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985). There is no dispute here that Plaintiff's claims arise from the alleged conduct of Hogan and DeSomma that was purposefully directed toward Plaintiff in Florida. Additionally, Plaintiff alleges that Hogan and DeSomma made false representations to it in Florida.

An alternative justification for finding sufficient "minimum contacts" lies in Plaintiff's claims of intentional torts committed by Defendants. "When an intentional tort is alleged,

6

personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." Exhibit Icons, LLC v. XP Companies, LLC, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009)(citing Calder v. Jones, 465 U.S. 783, 790 (1984)). Plaintiff has alleged that Hogan and DeSomma committed intentional torts against Plaintiff in Florida, and as such, Plaintiff has alleged that these defendants have sufficient minimum contacts with Florida so that they could reasonably expect to be sued there.

> b.  Traditional Notions of Fair Play and Substantial Justice

The exercise of jurisdiction over a defendant must "not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316. When "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477. In this circuit, the relevant factors for this analysis "include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies." Cronin v. Washington National Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993)(citations omitted).

In their motion, Defendants do not raise any argument that litigating the case in Florida would be burdensome. Furthermore, the Court notes that "Florida has a strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Pelc v. Nowak, 8:11-CV-79-T-17TGW, 2011 WL 4481571, at *5 (M.D.

7

Fla. Sept. 27, 2011). Lastly, there is no evidence to suggest that any other state has a greater interest in hearing this case than Florida. Accordingly, the Court finds that exercising jurisdiction over these claims comports with traditional notions of fair play and substantial justice. Therefore, the Court concludes that it may exercise personal jurisdiction over Hogan and DeSomma.

### B.  IMPROPER SERVICE

DeSomma argues that he was not served properly, and therefore, all claims against him should be dismissed. Service on an individual can be made by any method authorized in the state where the district court is located (Florida), the state where service is made (Arizona), or by a method specifically listed in the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 4.

Florida law allows service to be made by delivering a copy of the summons and complaint to the person or by leaving copies at his or her usual place of abode with any person residing therein who is at least 15 years old and informing the person of their contents. Fla. Stat. § 48.031(1)(a). Arizona law regarding service and the Federal Rules' listed means of service parallel one another. Ariz. R. Civ. P. 4.1(d); Fed. R. Civ. P. 4(e)(2). In relevant part, both allow for service by leaving a summons at the individual's dwelling so long as it is with someone of suitable age and discretion who resides there. Id. Therefore, the question before the Court is whether Plaintiff complied with the service requirements of Florida, Arizona, or the Federal Rules.

The proof of service in this case indicates that the process server served the complaint on a twenty-five year old white female co-resident of DeSomma.  (Doc. No. 11). However, the female would not give her name, and as such, it is impossible to tell from the proof of service

who was actually served. (Doc. No. 11). DeSomma argues that he was not properly served via substitute service, and he submitted an affidavit in which he states that the female that was purportedly served was his child's babysitter.

When a defendant raises a question as to the sufficiency of service, "it is the Plaintiff's burden to prove sufficient service." United States v. Austin, 11-80701-CIV, 2011 WL 4345308, at *3 (S.D. Fla. Sept. 16, 2011). However, when a return of service document is regular on its face, the burden shifts to the defendant to supply clear and convincing evidence of invalid service. Robles-Martinez v. Diaz, Reus & Targ, LLP, 3D10-1736, 2011 WL 3586179, at *2 (Fla. 3d DCA Aug. 17, 2011) (citation omitted). In this case, the return of service form is not entitled to deference, as it fails to indicate the name of the person upon which substitute service was made. See Gonzalez v. Totalbank, 472 So. 2d 861, 864 (Fla. 3d DCA 1985)(concluding that the return of service was defective because it did not reflect the name of the person served). Therefore, the burden of establishing proper service falls on Plaintiff.

The return of service form states that substitute service was made on a twenty-five year old co-resident, and if true, this would satisfy the federal requirements, as well as those of Florida and Arizona. However, DeSomma has submitted an affidavit in which he challenges the sufficiency of service by stating that the process server attempted to serve the babysitter that was at his house. Furthermore, the return of service form does not provide the name of the individual served, and as such, the Court does not have sufficient information to conclude that service was proper. Accordingly, the Court concludes that Plaintiff has not met its burden of showing that DeSomma was properly served.

The Federal Rules require that plaintiffs furnish defendants with a copy of the summons and complaint within 120 days after the complaint is filed. Fed. R. Civ. P. 4. While the 120 day period has expired, the same rule gives the Court discretion to allow Plaintiff additional time to properly serve DeSomma. In this case, the Court concludes that the interests of justice warrant granting Plaintiff an additional thirty days to properly serve DeSomma. If Plaintiff fails to properly serve DeSomma, the Court will dismiss the claims against him.

**C. ECONOMIC LOSS RULE**

Defendants contend that Plaintiff's claims for civil theft, intentional fraud, negligent fraud, and conspiracy are barred by the economic loss rule. This rule "bars independent tort claims stemming from a contractual breach that only result in economic loss . . . [but] does not apply to causes of action based upon negligent or intentional torts considered independent of the contractual breach even though a breach of contract action exists." Bradley Factor, Inc. v. United States, 86 F. Supp. 2d 1140, 1144 (M.D. Fla. 2000). The rationale behind the rule is that "[a] party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004).

    1. Fraud claims

Upon review of the complaint, the Court construes Plaintiff's two fraud claims as claims for fraudulent misrepresentation/fraudulent inducement and negligent misrepresentation, rather than claims of intentional and negligent fraud. The Florida Supreme Court has repeatedly found "that fraud in the inducement is a recognized exception to the economic loss rule." New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 907 (M.D. Fla. 2007). Even if "the

fraud concerns the subject matter of the contract," so long as the alleged fraud is "pre-contractual," the economic loss rule does not bar recovery. Bradley Factor, 86 F. Supp. 2d at 1145. In this case, the alleged fraud occurred before the formation of the contract. Plaintiff alleges that Hogan and Hogan Manufacturing fraudulently or negligently misrepresented that Hogan Manufacturing had the legal right to sell the guns at issue and that these misrepresentations caused Plaintiff to place an order. While misrepresentations related to the *performance* of contractual obligations will often not yield independent tort claims, Plaintiff alleges fraud in the *negotiation* of the contract (i.e., that they represented that Hogan Manufacturing had the right to sell the guns when they knew or should have known that Hogan Manufacturing did not have such a right when the representation was made, which was prior to the formation of the contract). Accordingly, the economic loss rule does not bar recovery for the fraudulent misrepresentation and negligent misrepresentation claims. Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th DCA 2000)(stating that the economic loss rule does not bar tort claims for fraudulent inducement and negligent misrepresentation).

    2.  Civil theft

When an alleged civil theft by a defendant is "not merely a failure to perform, but an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted, there is not merely a breach of contract but a separate and independent tort." Burke v. Napieracz, 674 So. 2d 756, 758 (Fla. 1st DCA 1996). When the same property is at issue for a civil theft claim as a breach of contract claim, the "civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'" Gersh v.

11

Cofman, 769 So. 2d 407, 409 (Fla. 4th DCA 2000) (citing Trend Setter Villas of Deer Creek v. Villas on Green, 569 So.2d 766, 767 (Fla. 4th DCA 1990)).

In this case, Plaintiff alleges that Hogan Manufacturing and Robert Hogan did more than simply fail to fulfill their contractual obligations. Plaintiff states that Robert Hogan and Hogan Manufacturing spun a web of deceit to induce Plaintiff to enter into a business transaction when they knew at they outset that Hogan Manufacturing had neither the legal right nor commercial ability to enter into it.  Additionally, Plaintiff alleges that Hogan Manufacturing retained Plaintiff's money after agreeing to return it and allegedly converted it for its own use. See Burke, 674 So. 2d at 758 (stating that failure to perform accompanied by theft are two independent claims). In other words, Plaintiff accuses Hogan Manufacturing and Robert Hogan of purposeful theft facilitated by a contract; thus, the economic loss rule does not preclude recovery.

      3. Conspiracy

The economic loss rule does not bar claims that are independent of a breach of contract claim, including claims of civil conspiracy. Hilliard v. Black, 125 F. Supp. 2d 1071, 1082 (N.D. Fla. 2000).  In the instant case, Plaintiff alleges a conspiracy to induce Plaintiff to enter into a contract in order to further a theft and to interfere with an existing business relationship, not merely a conspiracy to not perform under a contract. While some of the underlying facts are necessarily shared with the breach of contract claim, additional facts are alleged that support a finding of an independent tort. Accordingly, the economic loss rule does not bar Plaintiff's conspiracy claim.

**D. INSUFFICIENT PLEADINGS**

Defendants next argue that Plaintiff has failed to adequately plead all of its claims except Count I (breach of contract). A motion to dismiss for failure to adequately plead claims "merely tests the sufficiency of the complaint; it does not decide the merits of the case." Vasconez v. Hansell, 6:12-CV-236-ORL-31, 2012 WL 1631686, at *1 (M.D. Fla. May 8, 2012) (citation omitted). The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "must plausibly establish each element of the cause of action." Hogan v. Provident Life & Acc. Ins. Co., 665 F. Supp. 2d 1273, 1286 (M.D. Fla. 2009)(citation omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003)(citation omitted). Satisfying this standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

1. Civil theft

The complaint presents a claim of civil theft against Robert Hogan and Hogan Manufacturing. A claim for civil theft in Florida requires that the plaintiff prove that a conversion has taken place and that the defendant acted with criminal intent. See Walgreens Co. v. Premier Products of America, Inc., 2011 WL 4902985, at *5 (M.D. Fla. Oct. 14, 2011)(citations omitted). In this case, Plaintiff alleges that Hogan Manufacturing and Robert Hogan concocted an elaborate fraudulent scheme to purposefully appropriate Plaintiff's money

for their own use. Upon review of the allegations in the complaint, the Court concludes that Plaintiff has sufficiently alleged its civil theft claim.

2. Fraud claims

The complaint alleges intentional fraud and negligent fraud claims against Robert Hogan and Hogan Manufacturing, which the Court construes as claims of fraudulent misrepresentation and negligent misrepresentation. As per the Federal Rules of Civil Procedure, any pleading that alleges fraud is subject to a heightened pleading standard, which requires that claims be made "with particularity." Fed. R. Civ. P. 9(b); Johnson v. Amerus Life Ins. Co., 05-61363-CIV, 2006 WL 3826774, at *4 (S.D. Fla. Dec. 27, 2006) (stating that the heightened pleading standard applies to claims of negligent misrepresentation, because such claims sound in fraud). Accordingly:

> [This standard] is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks and citation omitted). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (internal quotation marks and citations omitted).

Plaintiff alleges that in order to induce Plaintiff to place an order with Hogan Manufacturing, Robert Hogan falsely stated that Hogan Manufacturing had the legal right and commercial ability to supply the guns, and he did so with the intent to cause Plaintiff to

14

abandon its existing contract with POF-USA and to convert Plaintiff's funds. Upon review of the allegations in the complaint, the Court concludes that the fraudulent and negligent misrepresentation claims comport with the heightened pleading standard, and these claims will not be dismissed.

### 3. Tortious interference with a business relationship

To succeed on a claim for tortious interference with a business relationship under Florida law, Plaintiff must demonstrate "(1) the existence of a business relationship . . . ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). Plaintiff alleges that it had a business relationship with POF-USA and that Hogan and DeSomma were aware of it. Furthermore, Plaintiff asserts that Hogan and DeSomma's scheme to defraud Plaintiff was partially motivated by a desire to interfere with Plaintiff's relationship with POF-USA. Finally, Plaintiff alleges that Hogan and DeSomma interfered with its relationship with POF-USA and that Plaintiff was damaged thereby, as Plaintiff was the nation's top seller of POF-USA's products prior to Hogan and DeSomma's interference. Accordingly, the Court concludes that Plaintiff's tortious interference claim is sufficiently pled.

### 4. Conspiracy

Defendants correctly assert that a conspiracy claim is predicated upon the existence of an underlying tort and that had this Court dismissed Plaintiff's multiple tort claims, the conspiracy claim would also have to be dismissed. Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1089

(11th Cir. 2004). The Court has not dismissed any of the tort claims, and Defendants have presented no other reason why Plaintiff's conspiracy claim should be dismissed.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendants' Motion to Dismiss (Doc. No. 6) is **DENIED.**

(2) Plaintiff must properly serve Defendant DeSomma and file proof of service by July 23, 2012. If proper service is not made within that timeframe, all claims against DeSomma will be dismissed.

**DONE AND ORDERED**, at Tampa, Florida this ___ day of June, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

16